[Civ. No. 1350.   Third Appellate District.—August 24, 1915.]

D. E. MANKINS, as the Trustee of Nick Carros, a Bankrupt, Appellant, v. FORWARD MOVEMENT SYNDICATE (a Corporation), et al., Respondents.

CONTRACT—RIGHT TO POSSESSION OF PROPERTY—CONDITIONAL PAYMENTS—CONSTRUCTION OF CONTRACT.—In this action by a trustee in bankruptcy to recover for the benefit of creditors the possession of certain wood cut and charcoal burned by the bankrupt on the defendant's land, it is held that under the contract involved, the plaintiff was not entitled to such possession upon the mere payment of the amount due for stumpage, but only upon the payment

in addition thereto of the amount of damages sustained by the defendant by the failure of the bankrupt to perform certain other covenants of the contract, which constituted a part of the consideration for the cutting of the wood and the burning of the charcoal.

APPEAL from a judgment of the Superior Court of Mendocino County. Thomas C. Denny, Judge presiding.

The facts are stated in the opinion of the court.

Thomas & Thomas, and Preston & Preston, for Appellant.

J. R. Pringle, and James G. Maguire, for Respondents.

CHIPMAN, P. J.—This was an action for an accounting, an injunction, and for the possession of certain personal property, to wit, wood. The findings were against the defendants other than defendant Forward Movement Syndicate, hereinafter referred to as the defendant. The other defendants do not appeal and need no further notice. The court rendered judgment in favor of defendant, on its cross-complaint, for the sum of $3.45 with interest at seven per cent. Plaintiff appeals from this much of the judgment. The first amended complaint was filed May 21, 1912. It does not appear when the original complaint was filed.

Carros had been declared a bankrupt in November, 1911, and, on December 1, 1911, plaintiff duly qualified as trustee. On October 31, 1910, the defendant as first party and Carros as second party entered into a written agreement as follows:

"1st. Party of the second part agrees to cut two thousand (2000) cords more or less of wood (4 x 4 x 8 ft. in measurement), white and black oak, and madrone, from that section of Lawndale Ranch known as 'Lake Region,' and to be cut where directed by Mr. Edward Sheehan, Superintendent of said ranch, but party of second part not to be compelled to cut wood from any inaccessible places involving *too great* expense to remove same.

"2nd. Party of second part agrees to cut wood out of a face, that is to work up all the trees clean that will yield merchantable timber into either wood or charcoal.

"3d. Party of second part agrees to pile for burning all brush too small for wood or charcoal.

"4th. All wood cut during fall and winter of 1910–1911 to be removed from the ground by or before Nov. 1st to leave said land accessible for planting eucalyptus.

"5th. All wood to be at contractor's risk after cutting, save during such time, if any, when party of first part may elect to burn the brush to clear the land for planting before removal of wood as per terms herein.

"6th. Party of second part hereby agrees to pay stumpage, Seventy-five cents ($.75) per cord for all wood cut in four feet wood or fourteen inch stove wood, two tiers to each cord, and for all charcoal burned to pay five cents per sack, 50 lbs. to the sack, party of second part to be allowed to use the brush of pine trees to cover charcoal pits in burning.

"7th. Party of second part hereby agrees to pay for wood as shipped in payments on two hundred cords at a time in advance; charcoal 1000 sacks at a time in advance. All wood and charcoal to be removed and paid for on or before May 1st, 1912, or paid for if not removed. All said wood or charcoal to be the property of the party of the 1st part until paid for. Party of first part may reserve any special trees desired for ornamental purposes on land.

Witness:                                   N. Carros,
C. D. Vassey, (Seal)    Forward Movement Syndicate,
                                Per Thaddeus S. Fritz, Pres.
                                Margaret B. Sheehan, Sec.''

The findings of fact embrace twenty type-written pages of the transcript from which the court deduced the following conclusions of law:

"That said contract was a conditional sale retaining title in the Forward Movement Syndicate, a corporation, until the stumpage and other covenants of said contract were complied with, and that under said contract there would be due to the defendant Forward Movement Syndicate, a corporation, the sum of $900.00 for stumpage, upon wood, the sum of $128.00 stumpage upon charcoal, and the sum of $600.00 as damages for the failure to keep covenants of the contract, making the total of $1628.00, upon which there has been paid the purchase price of said wagon and team, to wit, the sum of $425.00, leaving a balance due of $1203.00, on the contrary, however, the said defendant has converted to its own use 377 cords of wood of the net value of $636.75, and 2010 sacks of charcoal of the net value of $562.80, or a total of $1199.55,

leaving the sum of $3.45 due over and above the amount owing under said contracts.''

Appellant states his position as follows: ''We do not think that such a conclusion of the law can follow from the facts found. We think that when the contract is construed properly that the conclusion of law must be that no collateral covenants were to be met before the title to the wood and charcoal passed to the bankrupt,'' and that the contract does not authorize defendant ''to take credit for the damages suffered on covenants of contract, and as to those parts thereof, it must stand with the general creditors of the bankrupt.''

The appeal is on the judgment-roll alone and it must be assumed that the evidence justified the findings. It was found that the wood was cut and the charcoal in question burned pursuant to said contract and that defendant was in possession thereof at the commencement of the action; that at the commencement of the action and at all times since ''large sums of money had been due and owing and unpaid to defendant on account of the purchase price of said wood, as in said contract set forth and specified and of the character and amounts hereinafter set forth; . . . that defendant was at all said times and now is the owner of said property, subject to the right of said bankrupt or his trustee, to complete the conditional purchase thereof, as in said contract specified upon the performance of the conditions of said contract and the payment of the considerations therein mentioned.'' It was found that, on or about December 15, 1911, and at divers other times before the commencement of the action, plaintiff demanded of the defendant the possession of said property but defendant refused unless plaintiff should comply with the terms and conditions of said contract which plaintiff refused to do ''except to pay whatever balance might be due defendant on account of stumpage.'' It was then found that defendant, on November 1, 1911, and at other times prior to the commencement of the action, sold certain of said wood and charcoal at prices set forth but did not do so wrongfully or without right and the court charged defendants with the value thereof and also found the value of said wood and charcoal then on hand and charged defendant with the same; that defendant claimed and at all times has claimed the right under said contract to hold said property

and to dispose of the same ''to the amount that may have been due it under the above mentioned contract at the time that plaintiff was appointed trustee therein''; that plaintiff has at all times refused to perform any of the conditions of said contract except only to pay stumpage; that, prior to September 1, 1911, said Carros sold for his own use and benefit certain wood and charcoal for which he did not pay and has not paid the stumpage charge; that, on that day and until November 15, 1911, there remained on defendant's said ranch 1013 cords of wood and from September 1 to October 1, 1911, there remained 2010 sacks of charcoal; that, by agreement between plaintiff and defendant, the latter sold said charcoal for the best obtainable price the proceeds to be ''kept intact to abide the judgment of a court of competent jurisdiction with respect to the respective rights of the creditors of said Carros and said defendant''; that, between November 15, 1911, and April 11, 1912, defendant, claiming to be the owner, sold certain of said wood for the net price of $636.75 and defendant has received in all for said wood and charcoal the net sum of $1195.55 and there is now upon defendant's said ranch certain wood of a value found to which plaintiff is entitled and the court allowed plaintiff two months' time in which to remove the same from the premises. No complaint is made of this latter provision of the findings or judgment. The court also found that Carros, in October, 1910, turned over to defendant a team of horses and wagon of a value found as security for the performance of said contract by Carros. This item is taken into consideration in the accounting. The court then found that defendant had been damaged by Carros's failure to keep certain of his covenants, to wit: Three hundred and seventy-five dollars for failure ''to clear the land upon which the wood and charcoal were produced from brush and timber; $150.00 for failure to cut standing timber that has not been cut; $75.00 for failure to cut into stove wood wood that is down and suitable for this purpose, making a total of $600.00.''

Appellant, basing his contention upon paragraph VII of the contract, contends that the obligation of Carros was limited to the payment of stumpage and that whenever plaintiff offered to pay whatever was due for stumpage he was entitled to possession for the benefit of Carros's creditors.

It appeared that Carros abandoned his contract and departed from the state, about September 1, 1911, prior to his having been declared a bankrupt. To ascertain the obligation of Carros we must look to the entire contract and plaintiff's rights are to be measured by the rights and obligations of Carros under the contract. It is apparent that the contract involved something more than a mere agreement to pay stumpage for the wood cut and charcoal burned. The contract contemplates the clearing of the land so that plaintiff could plant eucalyptus trees thereon. Defendant claimed damages because of Carros's failure in this regard and for the loss of the eucalyptus plants, but the court found against defendant on these matters, probably because the damages were too remote.

Carros was to work up all the merchantable timber into either wood or charcoal; he was to pile for burning all the brush too small for charcoal; he was to remove the wood cut during the fall and winter of 1910–11 before November 1, "to leave said land accessible for planting eucalyptus"; he was to pay a certain price for stumpage "as shipped in payments on two hundred at a time in advance; charcoal 1000 sacks at a time in advance. All wood and charcoal to be removed and paid for on or before May 1, 1912, or paid for if not removed." And it was provided that "all said wood or charcoal to be the property of the party of the first part until paid for." Carros defaulted in nearly all these covenants.

It would seem to us unreasonable to hold that Carros could repudiate covenants so important to the manifest purpose contemplated by defendant in making the contract with him and still claim all its benefits. The obligations of Carros to do the acts referred to in the 2d, 3d, 4th and 5th paragraphs constituted part of the consideration for the privilege of cutting wood and burning charcoal on defendant's land. He did none of these things. W can perceive no principle of law or equity which would clothe his trustee in bankruptcy, representing Carros's general creditors, with any greater right than Carros himself had at the time he abandoned his contract.

It would be highly inequitable to allow Carros's general creditors to come in and by merely paying stumpage compel defendant to look to Carros's assets to make good the damage

defendant has suffered by his default.   When plaintiff made his demand as Carros's successor all these obligations had accrued and the contract had been abandoned by him, and we think defendant had the right to insist upon payment of these accrued damages before the removal of the wood and coal and that the court was justified in the accounting to allow damages as found by the court.

The judgment is affirmed.

Ellison, J., *pro tem.*, and Hart, J., concurred.